1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

11

12

13

14

TRACEY K. RANDALL,

                Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

                Defendant.

CASE NO. 13-cv-05652 BJR JRC

REPORT AND RECOMMENDATION
ON PLAINTIFF'S COMPLAINT

Noting Date: December 19, 2014

15

16

17

18

19

20

    This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of  H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 21, 25, 28; *see also* ECF Nos. 30, 31, 32).

21

22

23

24

    After considering and reviewing the record, the Court finds that the administrative law judge ("ALJ") erred in evaluating the medical evidence and when assessing plaintiff's residual functional capacity ("RFC").  The ALJ failed to account for plaintiff's

symptoms and side effects from medications that he takes to control his seizure disorder, both when evaluating the medical evidence and when determining plaintiff's RFC. Because a determination of plaintiff's credibility is based partly on the assessment of the medical evidence, plaintiff's credibility should be assessed anew following remand, and the lay witness evidence of Julie Wilson should be re-assessed as well. Finally, the possible conflict of interest posed by Dr. Carla van Dam's report should also be reviewed in light of the evidence presented by the plaintiff, and the medical evidence re-evaluated.

## BACKGROUND

Plaintiff, TRACEY K. RANDALL, was born in 1977 and was 23 years old on the alleged date of disability onset of December 31, 2000 (*see* Tr. 178-79, 180-83). Plaintiff completed high school and has a general studies associate's degree (*see* Tr. 53). Plaintiff has work experience as a fast food worker, pizza cook, moving van driver/helper, custodian, janitor, and warehouse worker (*see* Tr. 79-80, 221-35). He is currently working part-time as a pizza cook (*see* Tr. 51, 53).

The ALJ found that plaintiff has the severe impairments of attention deficit hyperactivity disorder ("ADHD"), bipolar disorder, generalized anxiety disorder, personality disorder, and lumbar and cervical degenerative disk disease (*see* Tr. 17).

At the time of the administrative hearing, plaintiff was living with three roommates (*see* Tr. 51).

## PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) of the Social Security Act was denied initially and following

reconsideration (*see* Tr. 93-96, 102-07).  Plaintiff's requested hearing was held before

ALJ Joanne E. Dantonio ("the ALJ") on August 3, 2011 (*see* Tr. 45-88). On January 17,

2012, the ALJ issued a written decision finding plaintiff not disabled pursuant to the

Social Security Act (*see* Tr. 11-33).

On May 28, 2013, the Appeals Council denied plaintiff's request for review,

making the written decision by the ALJ the final agency decision subject to judicial

review (*see* Tr. 1-4). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court

seeking judicial review of the ALJ's written decision in August, 2013 (*see* ECF Nos. 1,

4). Defendant filed the sealed administrative record regarding this matter ("Tr.") on

January 30, 2014 (*see* ECF Nos. 14, 15).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or

not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ

properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated

the lay witness evidence; (4) Whether or not the ALJ properly assessed plaintiff's

residual functional capacity ("RFC"); and (5) Whether or not the ALJ erred by basing her

step five finding on an RFC assessment that did not account for all of plaintiff's

limitations (*see* ECF No. 21, p. 1).

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1  1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

2  1999)).

3  <u>DISCUSSION</u>

4  **(1)      Whether or not the ALJ erred in failing to include plaintiff's seizure
           disorder at Step 2.**

5

6  The ALJ discussed plaintiff's history of seizures prior to the application date, but

7  indicated that she found this impairment to be not severe because plaintiff's seizures were

8  well-controlled with medication and did not cause "significant vocational limitations"

9  (*see* Tr. 17).

10  Although plaintiff concedes in his supplemental briefing that the ALJ's failure to

11  include plaintiff's seizure disorder as a severe impairment arguably is harmless error at

12  step two (*see* ECF No. 32, p. 1, 2 fn. 5), the important determination here is whether or

13  not the relevant limitations related to that impairment are included in the residual

14  functional capacity determination, as will be discussed below (*see infra*, Section (3)). *See*

15  *Smolen, supra,* 80 F.3d at 1290 (the ALJ "must consider the combined effect of all of the

16  claimant's impairments on her ability to function, without regard to whether each alone

17  was sufficiently severe") (citations omitted).

18

19  **(2)      Whether or not the ALJ properly evaluated the medical evidence.**

20  The Commissioner "may not reject 'significant probative evidence' without

21  explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v.*

22  *Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700,

23

24

706-07 (3d Cir. 1981))).  The "ALJ's written decision must state reasons for disregarding

[such] evidence." *Flores, supra*, 49 F.3d at 571.

    (A)    Side effects from medication

According to a relevant federal regulation:

> Since symptoms sometimes suggest a greater severity of impairment
> than can be shown by objective medical evidence alone, we will
> carefully consider any other information you may submit about your
> symptoms. . . . . . . . . Factors relevant to your symptoms, such as
> pain, which we will consider include:  . . . .  (iv) The type, dosage,
> effectiveness, and side effects of any medication you take her have taken
> to alleviate her pain or other symptoms;  . . . .

20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

In addition, according to SSR 96-7:

> In recognition of the fact that an individual's symptoms can sometimes suggest a
> greater level of severity of impairment than can be shown by the objective medical
> evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of
> evidence, including the factors below, that the adjudicator *must* consider in
> addition to the objective medical evidence when assessing the credibility of an
> individual's statements:…
>
>     . . . .
>
>     4.  the type, dosage, effectiveness, and side effects of any medication the
>     individual takes or has taken to alleviate pain or other symptoms…
>
> Once the adjudicator has determined the extent to which the individual's
> symptoms limit the individual's ability to do basic work activities by making a
> finding on the credibility of the individual's statements, the impact of the
> symptoms on the individual's ability to function must be considered along with the
> objective medical and other evidence, first in determining whether the individual's
> impairment or combination of impairments is "severe" at step 2 of the sequential
> evaluation process for determining disability and, as necessary, at each subsequent
> step of the process.

SSR 96-7, 1996 SSR LEXIS 4, at *7-*9 (emphasis added).

Although "Social Security Rulings do not have the force of law, [n]evertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations." *See Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (*citing Paxton v. Sec. HHS*, 865 F.2d 1352, 1356 (9th Cir. 1988); *Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th cir. 1988)) (internal citation and footnote omitted). As stated by the Ninth Circuit, "we defer to Social Security Rulings unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Id.* (*citing Chevron USA, Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-45 (1984); *Paxton, supra*, 865 F.2d at 1356) (footnote omitted).

Therefore, for the stated reasons, side effects of medication taken for pain, or other symptoms, must be considered when assessing allegations of disabling symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); SSR 96-7, 1996 SSR LEXIS 4, at *7-*9.

(B)    Plaintiff's seizure disorder and side effects from medication

Plaintiff was diagnosed with a seizure disorder in 2003, after he suffered his first seizure (*see* Tr. 299). Plaintiff experienced seizures again in 2005 and 2006 (*see* Tr. 209, 311-13, 317, 369, 469). Plaintiff's neurologist assessed his seizure disorder as recently as January 2009.

Defendant argues that "the ALJ did not improperly exclude consideration of the side effects of medication because plaintiff did not offer objective evidence that his medications caused side effects" (*see* ECF No. 31, pg. 5). To the contrary, the medical records reviewed by the ALJ contain several references to side effects experienced by

1   plaintiff, and plaintiff's own testimony at the administrative hearing refers to these side

2   effects.

3       Plaintiff's neurologist, Dr. Samuel Coor, assessed his seizure disorder as recently

4   as January 2009 in response to DDS' request for records.  Dr. Coor referenced memory

5   loss caused by the seizure medication Keppra, and the fact that the Seroquel "knocks him

6   out" (*see* Tr. 588).  Dr. Coor discussed with plaintiff that stopping his seizure medication

7   "is a bad idea" and offered him a surgical referral (*see id.*).  Dr. Coor also mentioned that

8   his medication could be "altered to something like Lamictal which does not have the

9   same degree of cognitive changes" (*see id.*). Although this treatment record includes

10  plaintiff's subjective report about his side effects, it also includes the objective

11  substantiation from plaintiff's neurologist that plaintiff's prescribed medication is

12  associated with such a "degree of cognitive changes" (*see id.*).

13

14      Dr. Coor referred plaintiff to a neurophysiologist, Dr. David G. Vossler, who

15  recommended medication changes to address plaintiff's complaints of memory loss (*see*

16  Tr. 608-10).  Dr. Coor and Dr. Vossler continued to adjust plaintiff's medications to

17  maintain control of seizures while minimizing side effects, including adding Strattera (*see*

18  Tr. 606, 749).  By July 2009, plaintiff's neurologist noted that his seizures were well

19  controlled and that his cognitive dysfunction was "some improved" with the Strattera (*see*

20  Tr. 760).

21

22      Office treatment records from Eastside Women's Health similarly reference the

23  side effects plaintiff was experiencing from his medications.  In one record, dated

24

December 18, 2008, it is noted that "Klonipin [sic] is working well for him.  He is having some memory problems, but mostly due to all the meds he is on" (*see* Tr. 597).

In addition, in response to his attorney's questioning, plaintiff testified to the various side effects he experiences as a result of his seizure medication at his hearing before the ALJ (*see* Tr. 71-74).  Plaintiff testified about side effects from Keppra, the medication he takes to control his seizures, including the inability to sleep, lack of appetite, and being "loopy" (*see* Tr. 71).  Plaintiff testified that he had spoken to his neurologist about the side effects of Keppra, but was advised to keep taking it in order to prevent the seizures.  Plaintiff also testified to taking Seroquel, a medication prescribed by his neurologist to help plaintiff sleep and "to keep the crazy down a little bit" (*see* Tr. 72).  Plaintiff testified that he gets headaches two to three times a week that can last all day, that once every week or two weeks he cannot stop crying, and that when he wakes up in the morning he is "droggy" and is "really tire [sic], sleepy," "exhausted" (*see* Tr. 72-75).

For the reasons stated and based on the record as a whole, the Court concludes that plaintiff adequately demonstrated that he was experiencing side effects from his seizure medications.  Not only did the ALJ fail to state any reasons for disregarding such evidence, she does not refer to such evidence at all.  The ALJ erred in evaluating the medical evidence by not taking into account plaintiff's side effects from his seizure medications.

(C)     Duty to develop the record

1   Further, the ALJ "has an independent 'duty to fully and fairly develop the

2   record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v.*

3   *Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (*quoting Brown v. Heckler*, 713 F.2d 411,

4   443 (9th Cir. 1983) (per curiam))). The ALJ's "duty exists even when the claimant is

5   represented by counsel." *Brown*, *supra*, 713 F.2d at 443 (*citing Driggins v. Harris*, 657

6   F.2d 187, 188 (8th Cir. 1981)).

7        Despite the fact that the ALJ found plaintiff's seizure disorder to be not severe,

8   there is evidence in the medical record and plaintiff's own testimony at the administrative

9   hearing regarding his seizure disorder, accompanying symptoms, and the side effects

10  plaintiff experiences from the medications he takes to control his seizure disorder.  This

11  is significant probative evidence that the ALJ erred in failing to discuss. *See Flores*,

12  *supra*, 49 F.3d at 570-71 (the Commissioner "may not reject 'significant probative

13  evidence' without explanation") (*quoting Vincent*, *supra*, 739 F.2d at 1395 (*quoting*

14  *Cotter*, *supra,* 642 F.2d at 706-07)). In addition, the evidence in the record regarding

15  plaintiff's side effects from his seizure medication triggered the ALJ's duty to develop

16  the record on this issue. *See Tonapetyan*, *supra,* 242 F.3d at 1150 (*quoting Smolen*, *supra,*

17  80 F.3d at 1288 (*quoting Brown*, *supra,* 713 F.2d at 443)).  The ALJ erred by failing to

18  develop the record regarding plaintiff's seizure disorder and side effects from

19  medications.  The issue of whether or not this error is harmless will be discussed in the

20  context of plaintiff's RFC (*see infra*, section (3)).

21      (D)    Plaintiff's mental impairments

Plaintiff argues that Dr. Carla van Dam's report should not have been given great weight by the ALJ because Dr. van Dam appeared to have a conflict of interest in that plaintiff believes she was working for both the State and SSA at the time she examined the plaintiff.  In her decision, the ALJ addressed plaintiff's attorney's objection, initially raised at the administrative hearing, by noting that Dr. van Dam did not do any evaluations of the claimant for the State agency (*see* Tr. 14).  While the evidence cited by plaintiff in his reply brief does not conclusively demonstrate that Dr. van Dam was concurrently working both for the State and for SSA, the submitted evidence does suggest a possible conflict of interest (*see* ECF Nos. 28 and 29).  Because "[a]ll implications of possible conflict of interest between medical or psychological consultants and their medical or psychological practices will be avoided" and "[p]hysicians and psychologists who work for us directly as employees or under contract will not work concurrently for a State agency," *see* 20 CFR § 416.919q, the ALJ's determination to give Dr. van Dam's opinion great weight should be considered anew in the context of the evidence provided by plaintiff following remand of this matter.

Because the Court recommends remanding the matter for further consideration, the medical evidence as a whole, and specifically Dr. Wingate's medical reports, should be assessed anew following remand.

    (3) **Whether or not the ALJ properly assessed plaintiff's RFC, and whether or not the ALJ erred by basing her step five finding on an RFC assessment that did not include all of plaintiff's limitations.**

    (A) Plaintiff's RFC.

"Where the ALJ has found a severe medically determinable impairment at step

1   two of the sequential analysis, 'all medically determinable impairments must be

2   considered in the remaining steps of the sequential analysis.'" *Hill v. Astrue*, 688 F.3d

3   1144, 1151 (9th Cir. 2012) (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)

4   (*citing* 42 U.S.C. § 423(d)(2)(B)).  However, [t]he ALJ "must consider limitations and

5   restrictions imposed by all of an individual's impairments, even those that are 'not

6   severe'" (*see* SSR 96-8p, 1996 WL 374184 *5).

7          Defendant argues that the ALJ's RFC assessment incorporates limitations that

8   were found by State agency consultants as related to plaintiff's seizure disorder (*see* Tr.

9   715, 717, 720), although the ALJ does not explicitly mention plaintiff's seizures in her

10  discussion of his RFC (*see* Tr. 19-24.   In fact, the only reference to plaintiff's seizure

11  disorder or side effect symptoms is the inclusion of avoiding concentrated exposure to

12  hazards and vibrations in the ALJ's RFC assessment and a mention that the plaintiff

13  "testified that he takes Kepra [sic] for seizures and Seroquel to help him sleep, which

14  works well" (*see* Tr. 19); there is no discussion of the side effects related to the

15  medication plaintiff takes to control his seizures, either by the State agency consultants or

16  the ALJ.

17         The determination regarding an RFC depends on a proper evaluation of the

18  medical evidence.  Because the ALJ failed to include seizures from plaintiff's list of

19  impairments and failed to discuss limitations from plaintiff's side effects from his seizure

20  medications as noted in the medical evidence and plaintiff's testimony, the RFC

21  determination was incomplete, flawed, and not supported by substantial evidence in the

22  record. *See Hill*, *supra,* 698 F.3d at 1161.

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 11

1   Further, since the ALJ's hypothetical to the VE at Step 5 was based on an RFC

2   that did not include additional limitations that represented plaintiff's seizure disorder or

3   side effects from seizure medications, the ALJ likewise erred at Step 5.

4   (B)   Harmless Error

5   The Ninth Circuit has "recognized that harmless error principles apply in the

6   Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

7   (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th

8   Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the

9   record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court

10   also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error

11   is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.*

12   (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008))

13   (other citations omitted). The court noted the necessity to follow the rule that courts must

14   review cases "'without regard to errors' that do not affect the parties' 'substantial

15   rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28

16   U.S.C. § 2111) (codification of the harmless error rule)).

17   When an ALJ fails to find an impairment severe, any error at step two is not

18   necessarily harmless just because the ALJ proceeds to subsequent steps in the sequential

19   disability evaluation process. *See Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

20   The Ninth Circuit court concluded that an ALJ erred where the ALJ failed to find severe

21   a claimant's panic disorder when the claimant described symptoms consistent with panic

22   disorder to the ALJ at the administrative hearing. *See id.* The court found that because

"the ALJ excluded panic disorder from [the claimant's] list of impairments and instead characterized her diagnoses as anxiety alone, the residual functional capacity determination was incomplete, flawed, and not supported by substantial evidence in the record." *See id.*

Similarly, in this case the ALJ found plaintiff's seizure disorder to be not severe. However, at the administrative hearing, the plaintiff testified to an inability to work due to seizures and symptoms that included side effects from the medications he takes to control those seizures.  In addition to plaintiff's testimony, medical records contained in the record and reviewed by the ALJ delineate plaintiff's seizure disorder and the side effects he experiences from the medications he takes for that disorder, as discussed above (*see supra*, section (2)(B)).

Had the ALJ discussed plaintiff's side effects from his medication, such as his inability to stay awake and his inability to think clearly, plaintiff's RFC may have included more limitations in these areas. Altering plaintiff's RFC likely would have affected the ultimate determination regarding plaintiff's disability. Therefore, the error is not harmless error. *See Molina*, *supra*, 674 F.3d at 1115.

(4)    **Whether or not the ALJ properly evaluated plaintiff's testimony and the lay witness evidence.**

A determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, because the medical evidence must be reviewed anew, plaintiff's credibility should be reassessed, as well.  Further,

1  since the ALJ discounted the lay witness evidence of Julie Wilson, based on the record as

2  a whole, the Court concludes that this lay evidence should also be re-assessed.

3  **(5)    Whether or not plaintiff's prior application for SSI benefits should be reopened.**

4

5  In a footnote in his opening brief, plaintiff mentions that he also filed a prior

6  application for benefits on July 8, 2008, and subsequent to his administrative hearing,

7  amended his alleged disability onset date to July 8, 2008 (*see* ECF No. 21 at 2 fn.2).

8  Plaintiff then cites 20 C.F.R. § 416.1488, noting that the prior decision may be reopened

9  within 12 months of the date of the initial determination "for any reason" (*see id*).

10 Despite there being no further discussion of this issue by plaintiff, defendant, also in a

11 footnote, reiterates that the ALJ decided plaintiff's case from March 3, 2009, the date

12 plaintiff protectively filed his application for SSI benefits, through the date of the ALJ's

13 decision (*see* ECF No. 25 at 2 fn.1).  Further, defendant takes plaintiff's mention of 20

14 C.F.R. § 416.1488 as suggesting that plaintiff is requesting his prior application of July 8,

15 2008 be reopened.

16

17 Assuming that plaintiff does in fact ask this Court to reopen his prior application,

18 the Court agrees with defendant's position that the ALJ's ruling is based on the period of

19 disability addressed by the ALJ and that a reopening determination is a decision for the

20 ALJ.  Further, as defendant informs the Court, "it would be premature to consider the

21 reopening issue [sic] at this time" (*see* ECF No. 25 at 3 fn.2) (*citing Byrnes v. Shalala*, 60

22 F.3d 639, 641 (9th Cir. 1995).  This Court agrees.

23

24

1

<u>CONCLUSION</u>

2

Based on these reasons, and the relevant record, this Court recommends that this

3

matter be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. §

4

405(g) to the Acting Commissioner for further consideration.  JUDGMENT should be for

5

plaintiff and the case should be closed.

6

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

7

fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

8

Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

9

10

purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

11

matter for consideration on December 19, 2014, as noted in the caption.

12

13

Dated this 25th day of November, 2014.

14

15

16

J. Richard Creatura
United States Magistrate Judge

17

18

19

20

21

22

23

24